UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DEAN CULL,

                 Plaintiff,        **AMENDED COMPLAINT**
                                               **JURY TRIAL DEMANDED**

   -against-

RADIO COMPUTING SERVICES, INC.    **Case No: 05 CV 10762(CLB)(GAY)**
                                                    **ECF CASE**

                 Defendant.
------------------------------------------------------x

Plaintiff, DEAN CULL as and for his complaint, by his undersigned counsel alleges as follows:

## **INTRODUCTION**

1.     This is an action to remedy violations of Plaintiff's rights under the Age Discrimination in Employment Act, 29 U.S.C.A.§621 and New York State Labor Law § 296.

## **JURISDICTION AND VENUE**

2.     The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§1331, 1343 and 1367. The Court's pendent jurisdiction is also invoked pursuant to statutory reference.

3.     Additionally, jurisdiction is invoked under 28 U.S.C. §1332 as Plaintiff is a citizen of the State of California. Defendant Radio Computing Services, Inc. (hereafter "RCS") is a New Jersey Corporation authorized to do business in New York, and damages to Plaintiff, exclusive of costs, are in excess of seventy-five thousand dollars.

4.     The unlawful employment practices alleged herein were commited in whole or in part in the Southern District of New York.

5.      Venue in the Southern District of New York is proper since Defendant RCS Principal Executive office is in said district.

## PARTIES

6.      Plaintiff who resides at 3815 Windmere Lane, Yankee Hill, California was employed by Defendant from 1994 to on or about March 24, 2005 when he was constructively discharged by Defendant.

7.      At all times relevant herein, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C.§§2000e, *et seq* protected against discrimination on the basis of his age and was a member of the protected group of workers 40 years of age or older.

8.      Defendant RCS is a New Jersey Corporation authorized to do business in New York and is engaged in the business of providing software to the broadcast industry. Defendant has and at all times relevant herein had its principal place of business at 12 Water Street, White Plains, New York 10601.

## PROCEDURAL REQUIREMENT

9.      Plaintiff has satisfied all procedural requirements prior to commencing this action. Plaintiff filed a timely charge of age discrimination with the Equal Employment Opportunity commission and received a notice dated November 7, 2005 of his right to sue in the United States district court pursuant to 42 U.S.C.A. § 2000e permitting plaintiff to bring this action. Plaintiff has therefore exhausted all available and administrative remedies.

## AS AND FOR A FIRST CAUSE OF ACTION

10.     Plaintiff hereby repeats and realleges every allegation contained in paragraphs 1 through 9 as if fully set forth herein.

11. On or about February 1993, Plaintiff was hired by Defendant to sell RCS products and to operate the RCS Western sales and engineering office. His compensation was based on salary, commission and fringe benefits.

12. During Plaintiff's tenure at RCS, he was their oldest salesman and top producer in sales in the United States.

13. Beginning in or around March 2002, Defendant began to make late and inaccurate commission payments to Plaintiff.

14. Plaintiff had to write repeated requests to Defendant in an attempt to be paid.

15. Defendant would routinely delay payment sometimes by three or four months.

16. In or around April of 2004, during the National Association of Broadcasters Convention (hereafter N.A.B.) in Las Vegas, Nevada, President of RCS Phillipe Generali (hereinafter Generali) stated to Plaintiff: "What will it take for you to retire?"

17. At the time of Generali's comment to pressure Plaintiff into retirement, Plaintiff was 69 years of age.

18. On or about August 15, 2004, while in a meeting with a customer, Generali notified Plaintiff by telephone that he had to choose between a severance package or to become a commission-only employee. Plaintiff had no advance notice of this elective.

19. Moreover, Plaintiff was informed that he would now have to pay all expenses he incurred for operating Defendant's western sales and engineering office, except for "previously authorized expenses."

20. Throughout Plaintiff's tenure at RCS all expenses Plaintiff incurred for operating Defendant's western sales and engineering office had been paid for by Defendant RCS.

21. In order to protect outstanding commissions that Defendant owed Plaintiff and under duress as more fully outlined below, he signed an agreement dated August 27, 2004 which called for commission only payments.

22. At the time of Plaintiff signing said agreement, in addition to the outstanding commissions owed to Plaintiff, he had numerous sales pending for which he was expecting to receive commissions after the closing of said sales.

23. At the time of Plaintiff signing said agreement, Plaintiff's wife, Jennifer Cull was employed by Defendant and Plaintiff feared that his refusal to sign the agreement would jeopardize her pay and benefits.

24. Immediately prior to Plaintiff's signing said agreement in August 2004, Defendant had offered Plaintiff the choice of a commission only agreement or a severance package.

25. When Plaintiff questioned Defendant regarding outstanding monies owed him, Defendant withdrew the offer regarding the severance package.

26. In or around August 2004, Plaintiff's wife, Jennifer Cull was given a severance package by Defendant which was paid over six months.

27. In or around August 2004, because Defendant were not paying Plaintiff's owed commissions in a timely fashion, Plaintiff and his wife had to live on her anticipated severance payments as well as an advance on her 401(k) savings.

28. Because he feared reprisal by way of Defendant withholding severance payments to his wife, Plaintiff under duress, signed the commission only agreement.

29. Defendant alleged restructuring of their payroll policy is a pretext for constructive discharge since in addition to the aforementioned decrease in pay they withdrew written territorial protection from Plaintiff's sales area of the 13 western states.

30. Following August of 2004, Defendant made it increasingly more difficult for Plaintiff to collect earned commissions, in some cases payments were made more than 60 days late.

31. Additionally, Defendant prevented Plaintiff from attending various industry conventions as well as the NAB convention held in San Diego in or around October 2004.

32. Upon information and belief, the NAB conventions are the number one source of sales leads in the industry.

33. By denying Plaintiff the right to attend the aforementioned conventions, Defendant denied Plaintiff access to past customers who would be in attendance.

34. In or around March 05, in addition to Defendant delaying Plaintiff's commission payments, Defendant directed Plaintiff to attend the NAB convention, to perform engineering work without pay.

35. As a result of Defendant's failure to pay Plaintiff's earned commissions in a timely manner, Plaintiff was made to suffer extreme financial hardship.

36. By incessantly delaying Plaintiff's commission payments, attempting to pressure Plaintiff into retirement and then directing Plaintiff to work without compensation, Defendant constructively discharged Plaintiff's employment.

37. By engaging in the foregoing conduct, Defendant violated Plaintiff's rights under the Age Discrimination in Employment Act, 29 U.S.C.A.§621.

38. As a proximate result of the foregoing, Plaintiff has been denied employment, has lost wages, benefits, promotional opportunities and bonuses and has incurred damages thereby in an amount to be determined at trial.

39. By acting as described above, Defendant acted with malice or with reckless disregard for Plaintiff's rights, causing Plaintiff to suffer emotional and psychological harm and entitling Plaintiff to damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

40. Plaintiff hereby repeats and realleges every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41. Following Plaintiff's execution of the aforementioned commission only agreement, Plaintiff had an agreement with Defendant to expect certain conduct from Defendant during the course of his employment, such as the Defendant's timely payment of commissions.

42. The termination of Plaintiff's employment on or about March 24, 2005 directly violated the implied covenants not to terminate Plaintiff in avoidance of paying commissions and good faith and fair dealing.

43. As a result of Defendant's willful discharge of payment of Plaintiff in breach of its employment contract, Plaintiff has incurred damages.

44. Plaintiff has been unable, despite reasonable efforts to find comparable employment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court grant judgment to him containing the following relief:

a. On Plaintiff's First Cause of Action, an order that Defendant hire Plaintiff or restore Plaintiff to his former position with full seniority, status , salary increments

bonuses and benefits, to the same extent that he would have received but for the employer's unlawful conduct;

      b.      An order prohibiting the Defendant from continuing or maintaining the policy, practice and/or custom of denying job benefits to Defendant on the basis of age;

      c.      An award to Plaintiff of his actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

      d.      An award to Plaintiff of double his actual damages in an amount to be determined at trial as liquidated damages under 29 U.S.C.A. § 626(b);

      e.      An award to Plaintiff of the costs of this action, together with his reasonable attorneys fees; and

      f.      On Plaintiff's Second Cause of Action, an award for past and future lost income, including all applicable fringe benefits, for a period of at least four years after the date of discharge in an amount that cannot be accurately determined at this time, but estimated to exceed $350,000.00;

      g.      An award for any and all economic loss in an amount to be determined at trial;

      h.      The costs of this action and his reasonable attorneys fees to the fullest extent permitted by law; and

      i.      Such other and further relief that this Court finds just and proper.

## JURY DEMAND

Plaintiff demands a jury of six persons for all claims stated herein.

Dated: White Plains, NY
       March 13, 2006

           LA PIETRA & KRIEGER

       By:_____
         Louis C. La Pietra (6978)

         Attorneys for Plaintiff
         30 Glenn Street
         White Plains, NY 10603
         (914) 684-6000